UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICE LYNNETTE McKINNEY,

    Plaintiff,

v.

WAYNE COUNTY DEPUTY H. FIELDS,
CITY OF HIGHLAND PARK, and WAYNE
COUNTY,

    Defendants.
    _____/

Case No. 07-cv-10652

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER ADOPTING THE MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION, AND DENYING DEFENDANTS'
<u>MOTION FOR SUMMARY JUDGMENT OR TO DISMISS</u> (docket no. 27)**

    In this suit under 42 U.S.C. § 1983, plaintiff Patricia McKinney claims that defendant H. Fields, a sheriff's deputy in Wayne County, Michigan, violated her rights under the Fourth Amendment to the United States Constitution. The matter is before the Court on Fields's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), or in the alternative for summary judgment under Federal Rule of Civil Procedure 56. Magistrate Judge Pepe, to whom the motion was referred, issued a Report and Recommendation ("R&R") that the motion be denied. Defendants have filed objections to this recommendation.

**FACTS**

    For purposes of this motion, Fields accepts McKinney's version of the facts, as articulated in her deposition and the affidavits of witnesses. In the early morning hours of September 16th, 2006, McKinney had been with several friends at the Palladium, a nightclub that appears to be located between Omira and Brush Streets on the north side

of Six Mile Road in Detroit, Michigan.  Dep. of Patrice McKinney, docket no. 28-3, pp. 44-45.  McKinney was still at the club when it closed around 2:30 AM, and shortly thereafter she joined a crowd of some dozens of people gathered outside, who were preparing to leave and saying their goodbyes.  Dep. of Patrice McKinney, docket no. 28-3, pp. 53, 57-58.  As McKinney herself was finishing socializing with her friends and starting toward her truck, four women came running from a dark corner of the club's parking space on the west side of the club building, screaming and crying that they had been robbed at gunpoint while getting into their car.  *Id.* at 63, 66.  For whatever reason, their eyes lighted on McKinney as the best person to ask for help.  *Id.* at 66-67.  McKinney used her mobile phone to call 911 and ask for assistance for the women, *id.* at 67-68,  but shortly thereafter one of the four started screaming and crying again, saying that she had seen the gunman still lurking in the corner of the parking space.  *Id.* at 70.  This moved the crowd to begin dispersing rather quickly.  *Id.* at 73.

McKinney, however, stayed with the women, let them into her truck, and drove a short ways out of the parking space onto Six Mile Road, stopping under a street light on the right side off the road just past the intersection with Omira Street.  *Id.* at 74.  She offered to wait with the women for 10 or 15 minutes, and if help had not arrived by that time to take them to a nearby coney island restaurant.  *Id.* at 73-74.  They sat in the car for a time, discussing the incident, until a Wayne County Sheriff's vehicle containing two officers approached from behind McKinney's truck.  *Id.* at 76. It appears that Deputy Fields was the driver of this car.  The women put their hands out the windows to flag the police down, and they pulled up next to McKinney's vehicle on Six Mile.  *Id.*

The other women "jumped out" of the truck and began explaining what had happened to them.  *Id.* at 77.  However, it appears that Deputy Fields had not been dispatched to

investigate the robbery. Six Mile Road is the boundary between the cities of Highland Park and Detroit, with Detroit being to the north and Highland Park to the south. Deputy Fields, a Wayne County officer, was apparently patrolling only the south side of the road,[1] while the robbery occurred on the north side, where the Palladium was located. Apparently because of this, Fields had no interest in offering assistance to the women, at least according to McKinney's testimony. McKinney stated that he was "very rude" in response to their pleas for help, *id.*, and that "he kept letting off the brake" as if to drive away, finally explaining that the matter should properly be handled by the Detroit police, not by him, *id.* at 78. McKinney asked him to "at least help me out and take them off my hands," *id.* at 79, but did so in a calm and collected manner, *id.* at 86. Despite this, and despite the four women's repeated pleas that he stay, Fields "eventually just took off," *id.* at 79.

As Fields drove away, the women were screaming, *id.* at 80, and before the squad car was even half a car length away, aff. of Jeanette Powell, docket no. 33-3, ¶ 14, McKinney yelled after him either "[t]his is bulls**t" or "that's some bulls**t," dep. of Patrice McKinney, docket no. 28-3, p. 81. She shouted it quietly enough that, according to one of the women in the car, her words would not have been intelligible from more than two car lengths away. App. of Jeanette Powell, docket no. 33-3, ¶ 21. McKinney herself "was shocked" that Fields heard her, but he did, and Fields turned around, ordered McKinney out of the truck, handcuffed her and arrested her with some force. Dep. of Patrice McKinney, docket no. 28-3, pp. 82-84. As she was being handcuffed, McKinney described herself as being "in shock" and extremely intimidated by Officer Fields, and asked in a calm voice why she was

---

[1] McKinney's complaint alleges that city of Highland Park had no police force of its own at the time of the incident in question, but instead contracted with Wayne County to provide police patrols. Compl., docket no. 1, ¶¶ 21-22. There is no information in the record to either confirm or contradict this allegation.

3

being arrested after trying to help women who had been robbed by an armed man who was still in the area. *Id.* at 87-88. Fields responded with the repeated use of foul language and threats to use mace on McKinney and jail her. *Id.* at 83, 87-88, 129-30. Except for not complying with his repeated orders to "shut the f*** up," McKinney offered no resistance, and "did everything he asked me to do." *Id.* at 89.

Fields put McKinney in his patrol car, and she sat there for approximately half an hour. *Id.* During this time Fields wrote her a ticket. *Id.* at 91. When another law enforcement vehicle pulled up alongside Fields's, Fields told the driver he was "okay," and let him continue on his route. *Id.* at 131. When the Detroit police finally arrived to investigate the initial 911 robbery call, Fields let McKinney out of his police car, handed her the ticket, informed her that she was being fined $500, and promptly left. *Id.* at 134-35. The ticket, which has been adduced in evidence, cited McKinney for misdemeanor "disorderly person," in violation of Highland Park Ordinance 666.05(g), which prohibits the use of "any indecent, insulting or immoral language." Docket no. 33-4. It recited that McKinney had violated this ordinance by "yelling at officer saying f*** yall you nothing but a b****.[2] The four women reported the robbery to the Detroit police, and McKinney eventually made her way home.

## PROCEDURAL POSTURE

McKinney brought suit under § 1983, alleging that this arrest was in retaliation for her criticism of Deputy Fields's conduct of his duties, and thus violated her right to free speech guaranteed by the First Amendment of the United States Constitution. She further claimed that by arresting her and then prosecuting her without probable cause, Fields violated her

---

[2] The ticket states that it was written on "W. McNichols" at "Brush." *Id.* The Court takes judicial notice that McNichols is another name for Six Mile Road, and that Brush and Omira Streets run parallel to each other and intersect Six Mile one block apart. Thus, the record is clear that McKinney was on McNichols/Six Mile Road between Brush and Omira when the incident occurred.

4

Fourth-Amendment right to be free of unreasonable searches and seizures. McKinney also brought First and Fourth Amendment claims against Highland Park and Wayne County, which she alleges had a practice or policy of unconstitutionally arresting and prosecuting citizens in response to their protected speech. As against Highland Park, she also alleges that the ordinance is unconstitutionally vague, in violation of the Due Process Clause of the Fourteenth Amendment. Finally, McKinney claims that Wayne County failed to train and supervise its deputies to assure their respect for constitutional rights, and deliberately took no action in spite of its knowledge of its officers' propensity to violate those rights.

After only a small amount of discovery had occurred, the defendants filed this motion to dismiss or for summary judgment, arguing that all of plaintiffs' claims were meritless because her own account of the facts established that Fields had probable cause to arrest her for committing a crime. The parties stipulated to postpone the remaining discovery until the Court has ruled on the instant motion. Docket no. 37.

The motion was referred to Magistrate Judge Steven D Pepe, who recommended denial. Docket no. 40. The defendants have filed objections to this recommendation. Because the Court agrees with Judge Pepe that more discovery is needed before summary judgment can properly be considered in this case, it will adopt the report and recommendation and deny defendants' motion.

## STANDARD OF REVIEW

A District Court's standard of review for a magistrate judge's report and recommendation depends upon whether a party files objections. With respect to portions of an R&R that no party has objected to, the Court need not undertake any review at all. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). On the other hand, Federal Rule of Civil Procedure 72(b)(3) provides that the Court "must determine de novo any part of the

5

magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Thus, the Court will conduct *de novo* review of the R&R with respect to defendants' objections.

The instant motion is styled one for dismissal *or* for summary judgment. However, the defendants have attached the plaintiff's deposition testimony as an exhibit to the motion. Federal Rule of Civil Procedure 12(d) provides that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Therefore, the Court will construe this motion as one for summary judgment.

Rule 56(c) provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law" Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue of material fact regarding the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Martin v. Ohio Turnpike Comm'n*, 968 F.2d 606, 608 (6th Cir.1992).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences in a light most favorable to the nonmoving party. *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987). The Court is not required or permitted, however, to judge the evidence or make findings of fact. *Id.* at 1435-36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *Id.* at 1435. A fact is "material" for purposes of summary judgment if proof of that

6

fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984).

## GOVERNING LAW

I.  Fourth Amendment Claim

The Fourth Amendment to the United States Constitution protects persons from "unreasonable searches and seizures." "In conformity with the rule at common law, a warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)(citing *United States v. Watson*, 423 U.S. 411, 417-24 (1976); *Brinegar v. United States*, 338 U.S. 160, 175-76 (1949)). "'[P]robable cause' to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979); *see also Criss v. City of Kent*, 867 F. 2d 259, 262 (6th Cir. 1988). But, "an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause. That is to say, his subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Devenpeck*, 543 U.S. at 153. Thus, under the Fourth Amendment, an arrest is "reasonable" if probable cause exists to believe that the arrestee has committed *any* crime– even if the arresting officer does not invoke that crime, and instead states that he is basing the arrest on some other offense for which probable cause does not exist. *Id.*; *see also United States v. Jones*, 432 F. 3d 34, 41 (1st Cir. 2005) (citing *Devenpeck* for the proposition that "the probable cause inquiry is not necessarily

7

based upon the offense actually invoked by the arresting officer but upon whether the facts known at the time of the arrest objective provided probable cause to arrest).

II. First Amendment Claims

"[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006) (citing *Crawford-El v. Britton*, 523 U.S. 574, 592 (1998) and *Perry v. Sindermann*, 408 U.S. 593, 597 (1972)). In general, to make out a claim of official retaliation for the exercise of First Amendment rights, "a plaintiff must show that (1) he was participating in a constitutionally protected activity; (2) defendant's action injured plaintiff in a way likely to chill a person of ordinary firmness from further participation in that activity; and (3) in part, plaintiff's constitutionally protected activity motivated defendant's adverse action." *Center for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F. 3d 807, 821 (6th Cir. 2007) (quoting *Bloch v. Ribar*, 156 F. 3d 673, 678 (6th Cir. 1998)) (internal quotation marks and alteration omitted).[3] Here, McKinney claims that Deputy Fields unlawfully retaliated against her in two different ways: first, by arresting her, and second, by causing her to be prosecuted.

The Supreme Court has recognized a First Amendment action for "retaliatory inducement to prosecute," *Hartman*, 547 U.S. at 262, which requires a plaintiff to prove the three elements noted above. For retaliatory inducement of prosecution claims the

---

[3] The Sixth Circuit has also used a slightly different test, inquiring whether "1) the plaintiff engaged in constitutionally protected speech; 2) the plaintiff was subjected to adverse action or was deprived of some benefit, and 3) the protected speech was a 'substantial' or a 'motivating factor' in the adverse action." *Brandenburg v. Housing Authority of Irvine*, 253 F. 3d 891, 897 (6th Cir. 2001) (citing *Mt. Healthy City School Dist. Bd. Of Education v. Doyle*, 429 U.S. 274, 287 (1977)). For reasons that the remainder of this opinion will make clear, the differences between these two versions of the test are not material here.

8

Supreme Court has added a fourth element: a plaintiff must also plead and prove that the prosecution was not supported by probable cause. *Hartman*, 547 U.S. at 265-66; *see also Barnes v. Wright*, 449 F. 3d 709, 719 (6th Cir. 2006). This is because a plaintiff can recover for a retaliatory prosecution only if retaliatory animus was actually the but-for cause of the prosecution, and the question of whether there was probable cause for the prosecution is more or less inextricably intertwined with this inquiry. *See generally Hartman*, 547 U.S. 250. Here, the defendants claim that McKinney has not established her case, because she has failed to show a lack of probable cause for her arrest and prosecution.

The defendants also assert that McKinney's alleged failure to demonstrate a lack of probable cause entitles them to judgment on her retaliatory *arrest* claim as well. The Sixth Circuit has not yet decided "whether *Hartman* adds another element"– the lack of probable cause– "to every First Amendment claim brought pursuant to § 1983," or applies only to malicious prosecution claims. *Leonard v. Robinson*, 477 F. 3d 347, 355 (6th Cir. 2007). In *Leonard* the court reversed a grant of summary judgment in favor of a defendant accused of arresting the plaintiff in retaliation for the plaintiff's exercise of his First Amendment rights. *Id.* at 362. It did so without deciding whether lack of probable cause was an element of such a claim, because it found that an issue of fact remained as to whether probable cause did in fact exist to justify the arrest, and thus would have held against the defendant regardless of whether lack thereof was an element of the claim or not. *Id.* On the current record, the Court finds this case to be similar to *Leonard*: even if a lack of probable cause *is* a required element of McKinney's retaliatory arrest claim, the defendants would not be entitled to summary judgment. Therefore, the Court need not squarely address the question at this time.

**DEFENDANTS' OBJECTIONS**

I.  Other Grounds for Arrest

The defendants object that in considering whether probable cause existed to justify her arrest, Magistrate Judge Pepe considered only whether McKinney had violated one portion of Highland Park Ordinance 660.05(g), which prohibits the use of "indecent, insulting or immoral language."  In addition to this provision, the defendants claim that there was probable cause to believe that McKinney had violated several other laws.  These include:

- Another portion of Highland Park Ordinance 660.05(g), which prohibits making "any improper noise, disturbance or riot;"
- Highland Park Ordinance 660.05(n), which prohibits making "any loud, boisterous or unseemly noise, whereby the traveling public, sojourners, citizens or residents of the City are disturbed or whereby the public peace is disturbed or broken;"
- Wayne County ordinance 170-3, which prohibits certain artificially-created "loud or unreasonable noise" during the nighttime hours, Detroit City Code 36-1-1(a), which prohibits disturbing the peace by "shouting or whistling;"
- Detroit City Code 38-5-1, forbidding the "making [of] any noise . . . by which the peace and good order of the neighborhood is disturbed;"
- and Michigan Compiled Laws 750.170, which makes it unlawful to "make or excite any disturbance or contention . . . in any street, lane, alley , highway . . . or other public meeting where citizens are peaceable and lawfully assembled."

In the Court's view, each of these statutes serves only to highlight the need for additional discovery and factual development in this case.  On this record it is not at all

10

clear whether a reasonable officer could have regarded McKinney's shout of "this is bulls**t" as creating probable cause to arrest her for making an "improper," "unseemly" or "unreasonable" noise under the Highland Park or Wayne County ordinances, or for disturbing the peace under Highland Park Ordinance 660.05(n), the Detroit ordinances, or the Michigan statute. All these questions will turn on both the volume at which plaintiff shouted and the size and proximity of any nearby group of people, as well as possibly on other attendant circumstances. To grant summary judgment when the only evidence in the record is a single deposition and one or two affidavits – especially when those documents contain evidence favorable to plaintiff on those issues – would be highly premature.

Indeed, it is not even entirely clear which municipality, Detroit or Highland Park, the plaintiff was physically located in when her allegedly unlawful conduct occurred. The defendants assert that McKinney violated both Detroit and Highland Park ordinances, but have not made the Court aware of any rule of law that would permit both cities to enforce their laws in the same geographical territory. The Court expresses no view on this question, but does regard it as demonstrating the importance of the factual issues that remain.

This problem becomes particularly acute in regard to the final ordinance that defendants claim McKinney violated – a Highland Park Ordinance 660.06(o), which forbids anyone to "[k]nowingly, purposely or recklessly impede or otherwise interfere with the normal flow of vehicular or pedestrian traffic on a public street or highway by means of a barricade, object or device, or with his or her person." McKinney did not explicitly admit to facts that would establish this violation in her deposition testimony. She did, however, testify as to where her car was parked, and the defendants assert that this area was a lane for moving traffic, not for parking, and was designated "no stopping, no standing." They

11

have also adduced in evidence a photograph of a lamppost with such a sign affixed to it. Docket no. 38-2. However, there is no competent evidence in the record establishing the location of the post and sign. Just as seriously, if McKinney was parked on the north side of Six Mile Road at the time the incident occurred – as seems likely, since she testified that the front of her car was facing west, docket no. 28-3 p. 74 – it appears that she may have been parked in Detroit, rather than Highland Park.[4] Again, the defendants have offered no explanation as to how a Highland Park ordinance could apply on those facts.

For all these reasons, the Court agrees with Magistrate Judge Pepe that fuller discovery is required before summary judgment can properly be considered in this matter.

II. Evidentiary Objections

Defendants also offer two objections as to Magistrate Judge Pepe's consideration of the evidence. First, they object that he improperly failed to consider McKinney's own deposition testimony, which defendants claim sets out facts establishing probable cause for her arrest. The Court has considered this testimony, however, and remains in agreement with Judge Pepe's conclusion. *See supra*, Facts section and Part II.

Defendants also object to Judge Pepe's treatment of the affidavit of Jeanette Powell, one of the four women who had been robbed. They assert that the magistrate should not have considered Ms. Powell's "attestations of personal belief[]" that "no one was disturbed . . . or acted like they were disturbed" by what McKinney shouted from her vehicle, because

---

[4] While Detroit also prohibits obstructing traffic, the terms of its ordinance are somewhat different than Highland Park's, and would not clearly apply to McKinney's action of simply stopping her car near the side of the road. *See* City of Detroit Ord. 66-5-2 (specifically enumerating situations where stopping one's car is prohibited).

12

those attestations are (1) without foundation, (2) subjective perceptions, and (3) irrelevant to the existence of probable cause for her arrest.

The foundation for these statements, however, is clear: plaintiff was necessarily physically present when she spoke the words in question, and thus was able to observe the reactions of bystanders. Further, Federal Rule of Evidence 701 permits opinion testimony despite its subjective nature, if the opinion is "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." In a case such as this one, where the existence of probable cause to believe that plaintiff was disturbing the peace is a key issue, the testimony of an eyewitness as to whether bystanders were "disturbed" or were acting in a disturbed manner self-evidently meets all three of these criteria.

Finally, Ms. Powell's observations are clearly relevant to this case, in two different ways. First, whether anyone was disturbed by McKinney's utterance is relevant to whether probable cause existed to believe she had violated most of the statutes that defendants assert Judge Pepe should have considered. Highland Park Ordinance 666.05(n) can be violated only if "the traveling public, sojourners, citizens or residents of the City are disturbed or whereby the public peace is disturbed or broken." Likewise, Detroit City Ordinance 36-1-1 prohibits only such shouting as "unreasonably" disturbs or annoys either "the public peace and quiet" or the "quiet, comfort and repose of persons in the vicinity." Detroit City Ordinance 38-5-1 bans noises "by which the peace and good order of the neighborhood is disturbed." And Mich. Comp. Laws § 750.170 specifically limits its prohibition to the exciting of a "disturbance or contention." Ms. Powell's assertion that plaintiff's shouted complaint created no disturbance tends to show that she did not commit

13

any of those violations– and, that at the time of the arrest Deputy Fields had knowledge of facts indicating a lack of probable cause to arrest her for those crimes.

## CONCLUSION AND ORDER

Magistrate Judge Pepe did not err in regarding Jeanette Powell's affidavit testimony as relevant and admissible. Further, after an independent examination of plaintiff McKinney's testimony, the Court is satisfied that any error the magistrate may have committed in his treatment of it is harmless and does not affect the correctness of his recommendation. Finally, the Court wholly agrees with Judge Pepe that material questions of fact remain as to both whether the defendants violated the Fourth Amendment and whether Deputy Fields is entitled to qualified immunity from prosecution, and that further factual development in this case is therefore required.

**WHEREFORE**, it is hereby **ORDERED** that the magistrate's Report and Recommendation is **ADOPTED**, and defendants' motion for summary judgment is **DENIED**.

**SO ORDERED.**

                              s/Stephen J. Murphy, III
                              STEPHEN J. MURPHY, III
                              United States District Judge

Dated: March 27, 2009

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 27, 2009, by electronic and/or ordinary mail.

                              Alissa Greer
                              Case Manager