UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICE LYNNETTE McKINNEY,

    Plaintiff,

Case No. 07-cv-10652

HONORABLE STEPHEN J. MURPHY, III

v.

WAYNE COUNTY DEPUTY H. FIELDS,

    Defendant.

                                           /

**OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT (docket no. 59) AND CANCELLING HEARING**

This is a civil rights action in which plaintiff Patricia McKinney claims that defendant H. Fields, a sheriff's deputy in Wayne County, Michigan, violated McKinney's clearly established constitutional rights. The matter comes before the Court on Fields's renewed motion for summary judgment.[1] This is the second time Fields has moved for summary judgment in this case. The court denied the first motion because it concluded McKinney was entitled to further discovery to oppose summary judgment. Discovery is over and the motion has been briefed.[2] A hearing is not necessary, and the Court will decide the motion on the papers. *See* E.D. Mich. LR 7.1(f)(2). For the reasons stated below, the motion will be denied.

**FACTS**

For purposes of this motion, Fields accepts McKinney's version of the facts as articulated in her deposition and the affidavit of Jeanette Powell. The facts were summarized in the Court's order of March 27, 2009.

---

[1] The motion was originally filed by all Defendants, but since the claims against the other two defendants have since been dismissed, Fields is properly considered the moving party.

[2] Fields decided not to file a reply brief.

In the early morning hours of September 16th, 2006, McKinney had been with several friends at the Palladium, a nightclub that appears to be located between Omira and Brush Streets on the north side of Six Mile Road in Detroit, Michigan. Dep. of Patrice McKinney, docket no. 28-3, pp. 44-45. McKinney was still at the club when it closed around 2:30 AM, and shortly thereafter she joined a crowd of some dozens of people gathered outside, who were preparing to leave and saying their goodbyes. Dep. of Patrice McKinney, docket no. 28-3, pp. 53, 57-58. As McKinney herself was finishing socializing with her friends and starting toward her truck, four women came running from a dark corner of the club's parking space on the west side of the club building, screaming and crying that they had been robbed at gunpoint while getting into their car. *Id.* at 63, 66. For whatever reason, their eyes lighted on McKinney as the best person to ask for help. *Id.* at 66-67. McKinney used her mobile phone to call 911 and ask for assistance for the women, *id.* at 67-68, but shortly thereafter one of the four started screaming and crying again, saying that she had seen the gunman still lurking in the corner of the parking space. *Id.* at 70. This moved the crowd to begin dispersing rather quickly. *Id.* at 73.

McKinney, however, stayed with the women, let them into her truck, and drove a short ways out of the parking space onto Six Mile Road, stopping under a street light on the right side off the road just past the intersection with Omira Street. *Id.* at 74. She offered to wait with the women for 10 or 15 minutes, and if help had not arrived by that time to take them to a nearby coney island restaurant. *Id.* at 73-74. They sat in the car for a time, discussing the incident, until a Wayne County Sheriff's vehicle containing two officers approached from behind McKinney's truck. *Id.* at 76. It appears that Deputy Fields was the driver of this car. The women put their hands out the windows to flag the police down, and they pulled up next to McKinney's vehicle on Six Mile. *Id.*

The other women "jumped out" of the truck and began explaining what had happened to them. *Id.* at 77. However, it appears that Deputy Fields had not been dispatched to investigate the robbery. Six Mile Road is the boundary between the cities of Highland Park and Detroit, with Detroit being to the north and Highland Park to the south. Deputy Fields, a Wayne County officer, was apparently patrolling only the south side of the road,[1] while the robbery occurred on the north side, where the Palladium was located. Apparently because of this, Fields had no interest in offering assistance to the women, at least according to McKinney's testimony. McKinney stated that he was "very rude" in response to their pleas for help, *id.*, and that "he kept letting off the brake" as if to drive away, finally explaining that the matter should properly be handled by the Detroit police, not by him, *id.* at 78. McKinney asked him to "at least help me out and take them off my hands," *id.* at 79, but did so in a calm and collected manner, *id.* at 86. Despite this, and despite the four women's repeated pleas that he stay, Fields "eventually just took off," *id.* at 79.

2

> FN 1: McKinney's complaint alleges that city of Highland Park had no police force of its own at the time of the incident in question, but instead contracted with Wayne County to provide police patrols. Compl., docket no. 1, ¶¶ 21-22. There is no information in the record to either confirm or contradict this allegation.

As Fields drove away, the women were screaming, *id.* at 80, and before the squad car was even half a car length away, aff. of Jeanette Powell, docket no. 33-3, ¶ 14, McKinney yelled after him either "[t]his is bulls**t" or "that's some bulls**t," dep. of Patrice McKinney, docket no. 28-3, p. 81. She shouted it quietly enough that, according to one of the women in the car, her words would not have been intelligible from more than two car lengths away. Aff. of Jeanette Powell, docket no. 33-3, ¶ 21. McKinney herself "was shocked" that Fields heard her, but he did, and Fields turned around, ordered McKinney out of the truck, handcuffed her and arrested her with some force. Dep. of Patrice McKinney, docket no. 28-3, pp. 82-84. As she was being handcuffed, McKinney described herself as being "in shock" and extremely intimidated by Officer Fields, and asked in a calm voice why she was being arrested after trying to help women who had been robbed by an armed man who was still in the area. *Id.* at 87-88. Fields responded with the repeated use of foul language and threats to use mace on McKinney and jail her. *Id.* at 83, 87-88, 129-30. Except for not complying with his repeated orders to "shut the f*** up," McKinney offered no resistance, and "did everything he asked me to do." *Id.* at 89.

Fields put McKinney in his patrol car, and she sat there for approximately half an hour. *Id.* During this time Fields wrote her a ticket. *Id.* at 91. When another law enforcement vehicle pulled up alongside Fields's, Fields told the driver he was "okay," and let him continue on his route. *Id.* at 131. When the Detroit police finally arrived to investigate the initial 911 robbery call, Fields let McKinney out of his police car, handed her the ticket, informed her that she was being fined $500, and promptly left. *Id.* at 134-35. The ticket, which has been adduced in evidence, cited McKinney for misdemeanor "disorderly person," in violation of Highland Park Ordinance 666.05(g), which prohibits the use of "any indecent, insulting or immoral language." Docket no. 33-4. It recited that McKinney had violated this ordinance by "yelling at officer saying f*** yall you nothing but a b****.[2] The four women reported the robbery to the Detroit police, and McKinney eventually made her way home.

> FN 2: The ticket states that it was written on "W. McNichols" at "Brush." *Id.* The Court takes judicial notice that McNichols is another name for Six Mile Road, and that Brush and Omira Streets run parallel to each other and intersect Six Mile one block apart. Thus, the record is clear that McKinney was on McNichols/Six Mile Road between Brush and Omira when the incident occurred.

3

Order of March 27, 2009 (docket no. 47), at 1-4.

The record now contains an affidavit from Wayne County Undersheriff Daniel Pfannes. Pfannes states the following in his affidavit:

> 2. As the Wayne County Undersheriff, I am familiar with the various divisions within the Sheriff's Office, the jurisdictional boundaries of Wayne County, roadways under its jurisdiction, and law enforcement powers of Sheriff Deputies.
>
> 3. Wayne County Sheriff Deputies are sworn to enforce state law, Wayne County Ordinances, Highland Park City Ordinances, Detroit City Ordinances, and more, pursuant to state law or intergovernmental agreements.
>
> 4. McNichols, also known as Six Mile Road, is a highway under the jurisdiction of the County of Wayne. It is a two lane roadway bordering the City of Detroit and the City of Highland Park with one lane designated for eastbound traffic and one lane designated for westbound traffic.
>
> 6.[3] Wayne County Charter Sec. 241-1 adopted the Michigan Vehicle Code, Act No. 300 of the Public Acts of Michigan of 1949 (MCL 257.1 et seq.) as amended, by reference to govern vehicular traffic on streets and highways under the jurisdiction of the county. Charter Sec. 241-2 states: "References in the Michigan Vehicle Code to "local authorities" shall mean the County.["]
>
> 7. If a car was parked on the north side of McNichols, facing west, between Brush and Omira at 3:30 a.m. on September 16, 2006, it would have been in violation of (a) MCL 257.676b(1) which states "a person, without authority, shall not block, obstruct, impede, or otherwise interfere with the normal flow of vehicular or pedestrian traffic upon a public street or highway in this state, by means of a barricade, object, or device, or his or her person".
>
> 8. The car would also have been in violation of MCL 257.674(1)(n), "at a place where an official sign prohibits stopping or parking"; and MCL 257.674(1)(w), "in violation of an official sign restricting the period of time for or manner of parking".
>
> 9. A Wayne County Sheriff Deputy assigned to the Highland Park Road Patrol Division would have authority to issue a citation for any one of those offenses.

Pfannes Aff. ¶¶ 2-9 (docket no. 62, ex. 1).

---

[3] The affidavit does not include a paragraph 5.

## PROCEDURAL POSTURE

McKinney brought suit under § 1983, alleging that her arrest was in retaliation for her criticism of Deputy Fields's conduct of his duties, and thus violated her right to free speech guaranteed by the First Amendment to the United States Constitution. She further claims that by arresting her and then causing her to be prosecuted without probable cause, Fields violated her right under the Fourth Amendment to be free of unreasonable searches and seizures. McKinney also brought First and Fourth Amendment claims against Highland Park and Wayne County.

Shortly after discovery began, Defendants filed a motion to dismiss or for summary judgment arguing that McKinney's claims lacked merit because her own account of the facts established that Fields had probable cause to arrest her for committing a crime. The matter was referred to Magistrate Judge Steven D. Pepe, who recommended the motion be denied. *See* docket no. 40. Defendants objected to the Report. The Court overruled the objections and adopted the reasoning in the Report and Recommendation. It agreed with the magistrate judge that there were disputed issues of material fact, and that according the evidence adduced so far, it was not at all clear whether a reasonable officer would have regarded McKinney's statements on the night in question as creating probable cause to her arrest her for violations of various city ordinances. *See* Order of March 27, 2009, at 10-11.

Fields has renewed his motion and again asserts that McKinney's claims are "barred" by the existence of probable cause. Def. Mot. at 14. He rightly recognizes that all of McKinney's constitutional claims turn on the presence or absence of probable cause. He also asserts that a reasonable jury would be compelled to conclude that he had probable cause to arrest McKinney for a litany of various violations.

While Fields's motion was pending, and before the McKinney filed her response brief, the parties stipulated to the dismissal of all claims against the City of Highland Park and Wayne County. *See* docket nos. 60 & 63. Accordingly, only the claims against Fields remain.

**DISCUSSION**

I. <u>Summary Judgment Standard</u>

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007) (citation omitted).

II. <u>Analysis</u>

Fields asserts the judgment should be entered in his favor because a jury would be compelled to conclude he had probable cause to arrest McKinney, so he is entitled to qualified immunity.

Qualified immunity shields governmental officials performing discretionary functions from civil damages liability as long as their actions " 'could reasonably have been thought consistent with the rights they are alleged to have violated.' " *Livermore v. Lubelan*, 476 F.3d 397, 403 (6th Cir. 2007) (quoting *Solomon v. Auburn Hills Police Dep't*, 389 F.3d 167,

172 (6th Cir. 2004)). To find that an officer is entitled to qualified immunity, a court must conclude that: 1) the facts, when taken in the light most favorable to the plaintiff, shows that the officer's conduct violated a constitutional right; and 2) that right was clearly established in the light of the specific context of the case. *See Binay v. Bettendorf*, 601 F.3d 640, 646 (6th Cir. 2010). While the above sequence is often appropriate, it is not mandatory, and a court may consider either inquiry first. *Id.* at 647 (citing *Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009)). Once immunity is asserted, the plaintiff has the burden of demonstrating the officer is not entitled to it. *Id.*

The only basis for summary judgment asserted in Fields's motion is that probable cause existed for McKinney's arrest. Def. Mot. at 14. The presence or absence of probable cause is material to all of McKinney's claims,[4] so addressing that issue necessarily addresses all of McKinney's claims. The Court's only task in deciding this motion, therefore, is to determine whether a jury could reasonably conclude that probable

---

[4] McKinney asserts claims for unlawful arrest, First-Amendment retaliatory arrest and inducement to prosecute, and Fourth-Amendment malicious prosecution. Lack of probable cause is an element of, or otherwise material to, each theory of recovery. *See Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002) (lack of probable cause is element of Fourth Amendment wrongful arrest claim); *Hartman v. Moore*, 547 U.S. 250, 256 (2006) (lack of probable cause is element of First Amendment retaliatory inducement to prosecute claim); *Leonard v. Robinson*, 477 F.3d 347, 355 (6th Cir. 2007) (probable cause is relevant to First Amendment retaliatory arrest claim); *Thacker v. City of Columbus*, 328 F.3d 244, 259 (6th Cir. 2003) (lack of probable cause is element of Fourth Amendment malicious prosecution claim). Although the Sixth Circuit has not decided whether *Hartman* applies to all First Amendment retaliation claims, *see Leonard*, 477 F.3f at 355, Fields proceeds here on the implicit assumption that *Hartman* applies to McKinney's First Amendment retaliatory arrest claim and requires that she demonstrate the arrest lacked probable cause. Specifically, Fields argues that the existence of probable cause defeats *all* of McKinney's claims as a matter of law. This is the only argument he raises in the motion. For the argument to defeat the First Amendment retaliatory arrest claim, probable cause would have to be an essential element of the claim. *See Celotex Corp v. Catrett*, 477 U.S. 317, 322-23 (1986) ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an *element essential* to that party's case, and on which that party will bear the burden of proof at trial." (emphasis added)).

7

cause existed for the arrest.  If the Court concludes a jury could so find, Fields's motion must be denied.[5]

   A. Legal Standard for Probable Cause

The Fourth Amendment protects persons against "unreasonable searches and seizures." U.S. Const. amend. IV.  The Fourth Amendment has been incorporated into the Due Process Clause of the Fourteenth Amendment and is thereby applicable against the States.  *See Wolf v. Colorado*, 338 U.S. 25 (1949), *overruled on other grounds*, *Mapp v. Ohio*, 367 U.S. 643 (1961).  "In conformity with the rule at common law, a warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed."  *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) (citing *United States v. Watson*, 423 U.S. 411, 417-424 (1976) and *Brinegar v. United States*, 338 U.S. 160, 175-176 (1949)).

"A police officer has probable cause if there is a 'fair probability' that the individual to be arrested has either committed or intends to commit a crime."  *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002) (citing *Northrop v. Trippett*, 265 F.3d 372, 379 (6th Cir. 2001)).  "A police officer determines the existence of probable cause by examining the facts and circumstances within his knowledge that are sufficient to inform 'a prudent person, or one of reasonable caution,' that the suspect 'has committed, is committing, or is about to commit an offense.' "  *Id.* (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)).  " 'In general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible.' "  *Fridley*, 291 F.3d at 872 (quoting *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995)).

---

   [5] Fields does not contend that the constitutional rights he allegedly violated were not clearly established at the time of the arrest.  Accordingly, the second prong of the qualified immunity analysis is not in question.

The arresting officer's subjective state of mind (except for the facts he knows at the time) is irrelevant as to whether there is probable cause. *See Devenpeck*, 543 U.S. at 153. So long as the officer has probable cause to believe the suspect has committed or is about to commit *any* crime or offense -- even if the officer is subjectively unaware of the existence of the offense or never mentions the offense by name during the arrest -- the arrest is "reasonable" and may not support a claim for unlawful arrest. *Devenpeck*, 543 U.S. at 153.

B. Application

The Court has already once concluded that a jury could reasonably conclude that Fields lacked probable cause to arrest McKinney for disorderly conduct, as well as a number of other laws and ordinances generally prohibiting excessive noise. Order of March 23, 2009, at 10-11. Particularly, McKinney and Powell's testimony, if believed, establish that Fields lacked probable cause to arrest McKinney. Acknowledging this weakness, Fields asks the Court to disregard Powell's affidavit for purposes of the motion because he was unable to depose her during discovery. Def. Br., at 17-18. McKinney's counsel apparently provided incorrect addresses for the various witnesses and all efforts to find and depose Powell were unsuccessful. Fields asserts that because he was unable to take Powell's deposition, the Court should disregard her affidavit in deciding the motion. Fields offers no legal authority to support his request, and the Court will deny it. Discovery in this case spanned nearly three years. If Fields believed McKinney was withholding evidence in some way, he should have sought relief at the appropriate time. The Court will not resolve on summary judgment what is essentially a discovery dispute raised in an untimely and procedurally improper manner.

9

Fields's second line of attack in the motion is to identify three provisions of Michigan's traffic code that McKinney violated the night she was arrested, and assert that probable cause existed to arrest her for those violations such that her arrest did not lack probable cause. The three provisions Fields cites all prohibit blocking traffic on a public street or standing in front of an official sign prohibiting such conduct. *See* Mich. Comp. Laws §§ 257.676b, 257.674(1)(n) and (1)(w). As long as probable cause existed to believe that McKinney violated *any* crime, the arrest would be valid. *See Devenpeck*, 543 U.S. at 153. The problem with Fields's argument, however, is that the provisions of the Michigan traffic code he contends McKinney violated are all *civil infractions,* which an officer cannot arrest a person for violating.

Warrantless arrests may be made for criminal offenses. *Cf. Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor *criminal offense* in his presence, he may, without violating the Fourth Amendment, arrest the offender." (emphasis added)). The concept of probable cause makes sense only in relation to *criminal* offenses. *See, e.g.*, *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979) (" '[P]robable cause' to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an *offense*." (emphasis added)); *Northrop v. Trippett*, 265 F.3d 372, 379 (6th Cir. 2001) ("A police officer has probable cause if there is a 'fair probability' that the individual to be arrested has either committed or intends to commit a *crime*." (emphasis added)); *see also Barnett v. United States*, 525 A.2d 197, 199 (D.C. Cir. 1987) ("The undisputed testimony of Officer Willis leaves no doubt that appellant was arrested for violating a pedestrian traffic regulation

which is a *civil infraction* for which only a monetary sanction may be imposed. Consequently, the arrest was invalid." (emphasis added)). As a result, an arrest for a "civil infraction," as defined by the Michigan code, is "unreasonable." *See Marrs v. Tuckey*, 362 F. Supp. 2d 927, 939 (E.D. Mich. 2005) (Passenger's apparent violation of safety belt law, defined by Michigan traffic code as a "civil infraction," did not give state troopers probable cause to arrest her); *cf.* Mich. Comp. Laws § 66.7 ("*Except in the case of a civil infraction* . . . an action for a violation of an ordinance of the village may be commenced by warrant for the arrest of the offender." (emphasis added)); *id.* § 90.4 ("*Except in the case of a civil infraction action* . . . an action for the violation of an ordinance of the city may be commenced by warrant for the arrest of the offender." (emphasis added)). Fields cites no authority supporting the proposition that he could arrest McKinney for violating a provision of the Michigan traffic code that Michigan has deemed a civil infraction.[6]

Because a jury could find that Fields lacked probable cause to believe McKinney had committed *any* crime, and because the right to be free from arrests for committing civil infractions is clearly established, Fields is not entitled to qualified immunity on McKinney's constitutional claims.

---

[6] Fields cites *People v. Davis*, 250 Mich. App. 357 (2002), but it does not help him. The defendant in that case was pulled over by an officer for having an obstructed view, weaving, and speeding. A subsequent LEIN check revealed two outstanding warrants for which the suspect was ultimately arrested. A search incident to the arrest resulted in the discovery of cocaine in the vehicle. The court of appeals found that the officer had probable cause to believe the defendant violated three traffic laws so the traffic stop was lawful. *Id.* at 363. *Davis* involved a *traffic stop* for traffic violations. This case, by contrast, involved an *arrest* for alleged traffic violations. "As a general matter, the decision *to stop an automobile* is reasonable where the police have probable cause to believe a traffic violation has occurred." *See Whren v. United States*, 517 U.S. 806, 810 (1996) (emphasis added). This is different than saying the police may *arrest* a person where they have probable cause to believe a traffic violation has occurred. While some traffic violations may constitute criminal offenses for which the police may arrest a driver, traffic offenses are not categorically criminal offenses. The provisions cited by Fields in his motion are examples of such non-criminal traffic offenses.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Defendant's motion for summary judgment (docket no. 59) is **DENIED.**

**IT IS FURTHER ORDERED** that the hearing scheduled for September 9, 2010 at 2:00 p.m. is **CANCELLED.**

**SO ORDERED.**

                                         s/Stephen J. Murphy, III
                                         STEPHEN J. MURPHY, III
                                         United States District Judge

Dated: September 8, 2010

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 8, 2010, by electronic and/or ordinary mail.

                                         Alissa Greer
                                         Case Manager